Please be seated. The next case called for argument is People v. Elliot. Counsel, whenever you're ready. Sorry. I didn't look. I just thought you were there. May it please the court. And the counsel. At the trial of LaZahn Elliot, the evidence established that the shooter was the person Marquis Seddon dropped off at the liquor store. The prosecutor next had to establish that the person Marquis Seddon dropped off at the liquor store was the defendant, LaZahn Elliot. Now, no witness testified at the trial and identified LaZahn Elliot as the person Marquis Seddon dropped off. The prosecutor asked Detective Sgt. Parisi whether he, Sgt. Parisi, had learned the identity of the person Marquis Seddon dropped off at the liquor store. And Sgt. Parisi answered yes. And then the prosecutor asked, and who was that? And Parisi answered, LaZahn Doughboy Elliot. And the prosecutor asked, and you learned that from Major K. Squaw's interview of Marquis Seddon's and Kiwana Williams, correct? And Parisi answered, correct. In other words, Detective Sgt. Parisi testified that Marquis Seddon was interviewed by police and told police at that time, identified LaZahn Elliot as the person he dropped off at the liquor store. Now, in the context of this trial, given all the circumstantial evidence, identifying LaZahn Elliot as the person Marquis Seddon dropped off was tantamount to identifying him as the shooter, which of course was the ultimate issue at the trial. This was a case of testimonial hearsay, the kind of thing that the United States Supreme Court rightly condemned in Crawford v. Washington. In Crawford, the court said that the principal evil at which the confrontation clause was directed was ex parte examinations of witnesses by police officers and the use of the statements made during those ex parte examinations, the use of those as evidence against the defendant at trial. And this is exactly what we have here. I mean, if Marquis Seddon had been there at trial, if Marquis Seddon had been a witness at trial, if Marquis Seddon had been in that courtroom and had testified that LaZahn Elliot was the person he dropped off at the liquor store, well then, of course, there would have been no problem at all. What about Kiwana Williams? Didn't she also say that Doughboy was in the car with him and he got out at the liquor store? That gets a little confusing. Kiwana Williams was the person in the front passenger seat of Marquis Seddon's G8. At the trial, she said that Marquis Seddon referred to this person as Doughboy, the person in the back seat. Marquis Seddon referred to that person as Doughboy. Now, Kiwana Williams could not identify LaZahn Elliot as the person in the back seat of Marquis Seddon's car. When the prosecutor asked her, do you see in the courtroom today the person who was in the back seat of that car? She said, no, I can't do that. At trial, she did testify that Marquis Seddon called that other person Doughboy. However, during the recorded conversation that she had with the police and during Detective Trice's testimony at trial, it became clear that when she was speaking with the police several hours after this happened, she could not think of any name or nickname that Seddon had used with that person in the back seat. Detective Trice even asked her specifically, did Marquis Seddon use some kind of nickname that included boy when he was talking to that person in the back seat? And she told Detective Trice that she couldn't remember any nickname or name. So, no, Kiwana Williams definitely did not identify LaZahn Elliot as the person in the back seat, the person Marquis Seddon's dropped off. No. So, but when did she testify or when did she state that she heard Seddon's call, whoever it was, in the car with Doughboy? It was at trial that she testified that she heard Marquis Seddon's call Doughboy. But as I indicated, she was thoroughly cross-examining, thoroughly cross-examining, and I would say impeached. And Detective Trice himself admitted that she could not think of any name or nickname that Marquis Seddon had used with that person in the back seat. And again, my key point there was that she could not identify, Kiwana Williams could not identify LaZahn Elliot as the person in the back seat. No, it was the first time she had seen that person. And he was in the back seat and she was in the front seat. Although there was, I think, testimony that he looked entirely different at trial than he had previously? There was some testimony that his, I think it was Kiwana Williams who testified that the person in the back seat had his hair in braids. And she could not remember that he wore glasses. She could not remember whether he wore glasses. I thought it was the boyfriend. Kiwana Williams' boyfriend? No, no. Elliot's mom's boyfriend who testified that he looked entirely different at trial. Well, he testified that ordinarily LaZahn Elliot had braids. And also that he had glasses at trial and never wore glasses to his knowledge. And he testified at trial that the boyfriend at Bentman said that he had never before seen LaZahn Elliot wear glasses. Yes, I think that's definitely what Your Honor is referring to. So nobody testified at LaZahn, nobody testified at trial and identified LaZahn Elliot as the person who was dropped off by Marquis Suddens at the liquor store. It was through Detective Sergeant Parisi that Suddens' testimony came in. Parisi testified that Marquis Suddens was interviewed by Major Case Squad and told Major Case Squad during that interrogation, identified LaZahn Elliot as the person he dropped off at the liquor store. Now that is the testimonial hearsay that is the crux of my argument. And I believe I said that the court in Crawford made absolutely clear that the principal evil that the confrontation clause was directed at was the prosecution's use at trial of statements made by a non-testifying witness during ex parte examinations by the police. And that's what we have here, Marquis Suddens telling the police that it was LaZahn Elliot whom he dropped off at the liquor store. Marquis Suddens did not testify. That bit of testimony came in only through Detective Sergeant Parisi talking about what Marquis Suddens had said to the police. Now, as I say, the state needed to establish, in order to score a conviction against LaZahn Elliot, the state needed to establish that the person who was dropped off at the liquor store by Marquis Suddens was in fact the defendant, LaZahn Elliot. And it was only that bit of testimonial hearsay that said LaZahn Elliot was the person dropped off at the liquor store. That bit of testimonial hearsay filled a big, significant evidentiary gap in the state's case. They didn't have Marquis Suddens or anybody else to testify at trial. LaZahn Elliot was the person Marquis Suddens dropped off at the liquor store. It was only that testimonial hearsay. So that's why it's so significant. That's why this definitely is not a harmless constitutional error. Well, at any rate, I ask this court to reverse the judgment of conviction. On that basis, it was a serious constitutional error. And I ask this court to remand this cause for a new trial. Thank you. Thank you, Counsel. Counsel? May it please the court? Mr. Gleeson? First, the defendant has waived his right to raise this alleged confrontation clause violation on appeal as he neither objected to it at trial, nor did he raise it in a post-trial motion as the Illinois Supreme Court requires in People v. Enoch. Thus, the only way this court can review this issue is through the plain error analysis. And the threshold question in a plain error analysis is whether any error actually occurred at all. And here, no error occurred. The Illinois Constitution and the United States Constitution ensures that a defendant has the right to confront witnesses against him. In Crawford v. Washington, the United States Supreme Court held that generally the admission statements elicited during police interrogations are testimonial and are barred by the confrontation clause. However, testimony about out-of-court statements that is being offered for a purpose other than to prove the truth of the matter asserted are not implicated by the confrontation clause. In line with this principle of law, the Illinois Supreme Court has held that police officers may testify about conversations that they have had with others, such as witnesses or victims, when that testimony is being offered to show the steps taken in the investigation and not offered to prove the matter asserted by this other. How did this further the purpose of setting forth the steps taken? Well, in the line of questioning that the testimony at issue arises, the trial prosecutor was essentially asking Detective Parisi to take him step-by-step through Detective Parisi's investigation of this case. Detective Parisi began with his arrival on the scene of the crime. He talks about taking pictures. He talks about who was there when he arrived. And he's questioned all the way until he gets to the defendant's apprehension. But under that rationalization, wouldn't it always come in? Well, it can only come in when you're... It didn't come in. No statement came in. The it was just that he had a conversation with Marquise. There was no it in the sense that there was a statement. No statement came in. He only talked about that he had a conversation with Marquise. He never talked about the substantive content of his conversation with Marquise. But the substantive part of it was that Marquise identified the defendant as who he dropped off and who was issued. Well, he... Marquise did not... Detective Parisi did not state that Marquise stated that. The testimony at issue where Detective Parisi was being questioned by the trial prosecutor is as follows. He was backed in here and came out, came this way, dropped this individual off here. You learned who that individual was? Yes, sir, we did. Who was that? Laysen Doboy Elliott. And that was through an interview that you had with, that major case that you had with Marquise and Guana? That's correct. So he only testified that it was learned through the interview. That could be learned in a number of different ways through the interview. Not necessarily that Marquise stated that to him. Specifically identified Laysen Elliott as the gunman. So essentially, defendant's argument is made on incorrect paraphrasing of the testimony. I mean, in his argument he just stated, after going through the colloquy with Parisi and the prosecutor, he states, in other words, that's a paraphrasing and that's not what Marquise said and said. Detective Parisi only testified as to the steps taken during the police investigation and this falls under the explanatory exception. And as a result, the defendant's confrontation clause rights were not violated. No error here occurred. However, assuming arguendo that this court does find a Sixth Amendment violation, the defendant cannot prove plain error. Plain error allows unpreserved error to be reviewed where either one, the evidence is so close, or two, the error is so serious that the fundamental fairness of the defendant's trial is jeopardized. With respect to the first category, the evidence being so close, there was actually a mound of circumstantial and identification evidence that proved it was defendant who got out of Marquise's sentence car and that it was defendant who shot and killed the victim, Martin Lampley. The defendant's own father reviewed video surveillance of the gunman moments before he gets into the victim's car. The defendant's father reviewed this footage and identified the gunman as his son. The defendant's mother's boyfriend reviewed this same footage and identified the suspect as Layson Elliott. And as was mentioned by Your Honors earlier, the cuona, the passenger in the car at trial, also stated that the other passenger with her was Doboy. Chris Collier, who witnessed the gunman shoot his friend, identified the defendant in court as the gunman. And for this very reason, because the circumstantial and identification evidence is so overwhelmingly supporting, so overwhelmingly supports defendant's guilt, he cannot sustain the second prong of the plain error doctrine, that the evidence was so serious it affected the fairness of his trial. For these reasons, this court should reject defendant's complaint and the conviction for the first-degree murder should be affirmed. Thank you, Counsel. Counsel? Okay. The closest thing to a positive identification of Layson Elliott as the shooter was from Chris Collier, Christopher Collier. He was one of Mark Lampe's two friends who were there at the liquor store, specifically at the liquor store's walk-in window. It was Mark Lampe, Christopher Collier, and Robert Jones. Robert Jones could not begin to identify anybody as the shooter. It was Chris Collier who gave the closest thing to a positive ID of Layson Elliott as the shooter. But that was nowhere close to a positive ID. When the prosecutor asked Chris Collier, do you see the shooter in the courtroom today, the first words out of Chris Collier's mouth were, I'm not sure. But then he goes on to clarify, doesn't he? What's his next sentence? Some people might call it clarifying. He says that, he said, Christopher Collier says that, he has some thick cheeks and the jawline looks similar or the same. Yeah, I'd say that's him. Is that what he said? Yeah, I'd say it's him. Yeah, exactly. That's how he answered. I'd say it's him. And please remember that was after the prosecutor helped him out quite a bit with his extra questioning to get him beyond, to get Chris Collier beyond, I'm not sure. But there is evidence that he did change his appearance. Like hair, if it was, the initial description with the dreadlocks or whatever they said, I forget, they said it two ways. And then his hair was cropped, I guess, and clothing or something. There was more than one change I thought he mentioned. I think there were two things that we got from Luzon Elliott's mother's boyfriend and from Kiwana Williams. They said that his hair was in braids or twisties. I'd say twisties. Yeah, two different braids. And apparently it was not in braids or twisties at the trial. I don't know what his hair looked like specifically, just that it did not have braids or twisties at the trial. And he was wearing glasses, at least at some point, and apparently sunglasses at the trial. There were sunglasses at the trial? I say that only because Detective Parisi said that he couldn't see him when he was wearing glasses. He said, please take off the glasses. And Luzon Elliott took off the glasses. And then Parisi identified him as the person he arrested. So that's why I say it sounds as if they were sunglasses. Now, the State quoted from the record, and why don't I do the same? And specifically, I would draw this Court's attention to page R509 of the record. That's the part that my argument focuses on. And the prosecutor, Mr. Crist, asks Parisi, he was backed in here, indicating, and came out, came this way, indicating, dropped this individual off here, indicating. Oh, I mean, that was Parisi saying all that. And the prosecutor asks, you learned who that individual was? Parisi, yes, sir, we did. Question, and who was that? Answer, Luzon Doboy Elliott. And then the prosecutor asks, and that was through an interview that you had with, that the major case squad had with Marquis and Nuano. Answer, that's correct. So there, without any doubt, is the testimonial hearsay from Marquis' sentence. Frankly, I don't think it could be any clearer than that. Well, perhaps a moment of clarity is the time to end my argument. Thank you. Thank you very much for hearing me out, and I ask you to please reverse the judgment and remand the forum when you try. Thank you very much. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Both counsels will take the case under advisement.